The Town of Shrewsbury *v.* William B. Brown and Others.

*Action on the case. Corporations, for special damages in corporate capacity, same right of redress as individuals. Presumptive grants. User.*

Where a town or corporation have sustained special damage in their corporate capacity, they have the same right of redress as an individual in like circumstances; and where the party sustains the injury by the culpable misconduct or *negligence* of another, the party injured may recover the damages in an action on the case. *Sheldon* v. *Fairfax*, 21 Vt. 102.

The defendants had, for thirty years or more, used the water from Mill River, so called, and built a dam across said river, and taken the water by an artificial channel, through the village of Cuttingsville, in Shrewsbury, for several rods by the side of the highway, and within the limits of said highway; and in 1841, they rebuilt said dam, and constructed one of stone, higher and tighter than any dam previously built; damages resulted from its use to the highway, which were unknown before the construction of said stone dam. *It was held,* that as the water had been used, after the erection of the stone dam, but a short time, there is no ground to presume a grant from the town to use the water, as it had been used from the erection of that dam, until the suit was brought.

And it was held, that the defendants are confined to the use of the same amount of water that had been accustomed to flow over the highway in the race-way or artificial channel for fifteen years or more, and that they, *as to time,* are required to use it as it had been used for fifteen years; and that the court should so have instructed the jury in the trial below.

It is well settled law, that the *extent* of the *presumed right*, is determined by the *user*, upon which is founded the presumed grant; the right granted being only co-extensive with the right enjoyed.

THIS was an action on the case, for obstructing a highway in Shrewsbury. Plea, the general issue, and trial by jury.

On trial, the plaintiffs introduced testimony, tending to prove that the natural channel of Mill River is, and ever has been, to the east of the main village of Cuttingsville, in the town of Shrewsbury, in which channel the water would be harmless to the highways in the vicinity ; that some thirty or thirty-five years ago, a small dam was constructed across said river, above said village, and a portion of the water from said river conducted by an artificial canal and race-way through said village, on the west side of the street, and for several rods near the north end of the village, within the fencings of the highway, and at the north of said village across said highway by a sluice-way, and thence to the main river ; that at same date, mills and some other works were erected, and their machinery carried by the water from said canal. That defendants and their grantors had been and are the owners and possessors of said mills and works and water privileges, and had built said dam, canal and race-way, and sustained them ; that said mills, till within four or five years past, were used but a little in the winter season, and that in warm times.

Said dam, from its erection, has been several times rebuilt of about the same magnitude, and of logs, until some four or five years since, when it was rebuilt of stone, and raised higher, and tightened, and the mills rebuilt ; and from that time to the present, said mills and works have been used and run during the cold weather in the winter ; that when the mill and works are run in the cold weather, anchor-ice forms in the race-way below said mills, and at the sluice-way across said highway, whereby the sluice-way and the race-way become filled up with water and ice, and the water and ice are forced into the highway, sometimes to the depth of two or three feet, for a considerable distance, and thereby obstruct the highway, and render it nearly impassable at times.

That the obstructions aforesaid in the highway have much increased, and the inconveniences and damages to said town mainly produced since the building of said stone dam, and the running of said mills in cold winter weather.

That defendant, Royce, built said stone dam, having theretofore owned some of the mill privilege ; and at the time of building said dam, said Royce conveyed to defendants, Brown and Alexander, his remaining interest in said mills; that defendants, Foster and Story, take the water for their machinery from said canal above the mills, and conduct it, by a communication separate from that, to the works of Brown and Alexander, the water all uniting again below the works in the race-way, and before it reaches the highway.

That the said highway was formerly a part of the Green Mountain Turnpike, chartered in 1799, and so remained until about 1841, when the said town was held liable to maintain said highway ; and that the same had become a public highway, by virtue of proceedings under the provisions of the act of November first, 1838, entitled, " An act to facilitate the rendering turnpike roads "free roads." And since which time, said highway has been a public road, and said town liable to keep the same in repair, and so treated by said town.

The evidence tended to prove, that since 1841, the water had been used and run in said race-way a much longer time in the winter seasons than before 1841, but not in any greater quantity at one time.

And that the town had, from time to time, since said stone dam was rebuilt, been put to expenses, in repairing damages done by said water to said highway, and had been compelled to pay special damages suffered by individuals, by reason of the obstructions in said highway, by ice and water as aforesaid; and that all difficulty from said water and ice would be avoided by covering said race-way down to the sluice-way across said highway.

· The plaintiff's counsel requested the court to instruct the jury, that if they found that the said dam had been so altered, and the use of the water turned by said dam, and the said works had been so increased or changed by the defendants or their instrumentality, within fifteen years before the commencement of this suit, and after the said town had become liable to sustain said highway, as to produce or materially increase the obstructions in said highway, the plaintiffs are entitled to recover the damages said town has sustained thereby. That the plaintiffs had the benefits of the prior occupancy of said road by the said Turnpike Company, and

took the same with all the rights said company had in said road.

That if said Royce erected the said stone dam, or participated in its construction, and the other works, and then conveyed his interest therein to said Brown and Alexander, who, with the said Foster and Story, continued to use said dam and works, so by said Royce constructed and conveyed, and that such construction and use had caused said obstructions and damages to the plaintiffs, then the defendants were jointly liable in this action for the damage shown.

But the court refused so to instruct the jury, and did charge the jury that if they should find that at the time the said road was established as a public highway, and for the term of fifteen years next before the commencement of this suit, the occupants of said mills were and had been in the use of the water, and it had passed from the mills in the same channel during the whole time; and that the use of the water, as to time, was and had been limited only by the interest or convenience of the occupants, they are not liable in this action to the town for any injury sustained in consequence of the obstructions in the channel, by anchor-ice or other natural causes, although they may have used the water a greater length of time in each year since 1841, than before.

Verdict for defendants.

To the decision and charge, and refusal to charge of the court, the plaintiffs excepted.

*W. H. Smith* for plaintiffs.

1. The plaintiffs' remedy for the injuries complained of, is not barred by the statute, or by prescription. Their interest and liabilities in and for the highway mentioned in the declaration, rested and arose by operation of the statute law of the state, upon certain conveyances from the Green Mountain Turnpike Company. Laws of 1838, page 15. *State* v. *Shrewsbury*, 15 Vt. 283.

If that statute law was valid, the plaintiffs succeeded to all the rights and titles to said road for a public highway that said Turnpike Company had to the same for a turnpike road.

Highways and easements for travel are the property of, and under the supervision and control of the state, and the legislature may well transfer the title of and the responsibilities for them from private individuals to the towns, since their authority to transfer

the same from the towns to private companies is fully settled.— *Searsburgh Turnpike Co.* v. *Cutler*, 5 Vt. 315.

A public highway, with the legal responsibilities therefor by the plaintiffs, necessarily followed, by operation of law, the legal abandonment of the turnpike, or by a forfeiture of the grant for the turnpike road. *Lyman* v. *Dorr et al.*, 1 Aik. 217.

How are the interests and rights of the Turnpike Co. in said road to be separated from their *grantees*, the town? Here was not, and could not be, any *extinguishment* of rights and privileges to the easement, in its transition from the company to the town.— The title passed regularly, and by the only authority that could pass it.

The case shows that the damages, of which the plaintiffs complained, arose from the raising and tightening of the dam, and extending the works, within four or five years; and if the defendants had acquired a prescriptive right to use the water as it had been used for years before, still they had no right to change or increase such use to the injury of the plaintiffs. Their prescriptive right only extended far enough to cover such encroachment as the plaintiffs had submitted to before, and any extension of the works, which injured the plaintiffs, gives an action. 3 Kent's Com. 542 and 547. *Norton* v. *Volentine*, 14 Vt. 239.

2. Upon the merits, the plaintiffs make a proper case for recovery, and the declaration is fully sustained by the proof, as recited in the exceptions. And if the case does not come within the statute, the action is given upon the general principles of legal accountability, and *Case* lies. *Sheldon* v. *Fairfax*, 21 Vt. 102. *Griffin* v. *Farwell*, 20 Vt. 152. *Stratford* v. *Sanford et al.*, 9 Con. 275.

*Edgerton & Allen* for defendants.

Under the charge of the court, the jury must have found that the defendants and their grantors, "at the time the road became "a public highway," and for fifteen years next preceding the commencement of the suit, used the water according to *their interest or convenience;* that the water had passed from the mills in the same channel during the whole time, and the obstruction complained of arose from natural causes merely.

Under these circumstances, the defendants acquired a prescrip-

Shrewsbury *v.* Brown et al.

tive right, of which the town cannot now deprive them. *Shumway* v. *Simons,* 1 Vt. 53. *State* v. *Trask,* 6 Vt. 355. *Knights* v. *Heaton,* 22 Vt. 480. Angel on Water Courses, 143, 203 to 206.

The opinion of the court was delivered by

BENNETT, J. This is an action on the case, for obstructing a highway in the town of Shrewsbury. The highway mentioned in the declaration, and for the obstruction of which the action was brought, was formerly a part of the Green Mountain Turnpike, chartered in 1799, and so remained till about 1841, when the same became a public highway, by proceedings under the act of 1838, the object of which was to render turnpike roads *free roads,* and since then, the case finds that this has been a public highway, and the town bound to keep the road in repair. It seems that the water, running in the natural channel of *Mill River,* so called, would be harmless to the highway in the vicinity, if unobstructed by dams; a small dam was erected across the stream above the village of Cuttingsville, in Shrewsbury, by means of which, a portion of the water from the river was conducted in an artificial race-way through the village, on the west side of the street, and for several rods near the north end of the village, within the fences of the highway, and at the north end of the village across the highway, by a sluice-way, and thence to the main river; and that at the same date, mills had been erected, and other works, and their machinery carried by water taken from the canal or sluice-way; and that the defendants and their grantors had been and were the owners and possessors of said mills and works and water privileges, and built the dam, canal and sluice-way, and sustained them; that the mills had been used but little in the winter season, and that, in warm times, till within four or five years previous to bringing the suit.

It seems, that the dam had been rebuilt several times, of about the same hight of logs, and the water continued to be used much in the same way, until some four or five years before the trial in the County Court, when a stone dam was built, and raised higher and made tighter than the preceding dams, and the mills were also rebuilt; from that time, the mills and works had been run in cold weather in the winter, and anchor-ice had formed in the sluice-way and race-way, in the cold weather, whereby they became fill-

ed up with water and ice, and the water and ice were forced into the highway, by means of which it was obstructed, and at times became almost impassable; and the case finds that the obstructions in the highway have been much increased, and the damages to the town mainly sustained, since the building of the stone dam, and the running of the mills in cold weather.

The case shows, that since the building of the stone dam, the town have suffered special damage, by being compelled to repair the road by reason of damages done by the water to it, and by being compelled to pay damages sustained by others by reason of the insufficiency of the road, occasioned by the ice and water.

The court charged the jury, " that if they should find that at the time the road was established as a public highway, and for fifteen years before the commencement of the present action, the occupants of said mill were, and had been, in the use of the water, and it had passed from the mills in the same channel during the whole of the time, and that the use of the water as to time was, and had been, limited *only by the interest or convenience of the occupants*, they were not liable for any damages sustained in consequence of any obstruction in the channel by anchor-ice, or other natural causes, although they might have used the water a greater length of time in each year since 1841, than before."

If the plaintiffs have sustained special damage in their corporate capacity, we see no reason why they should not, for such consequential damage, have the same right of redress, as an individual in like circumstances might have had. In the case of *Sheldon* v. *Fairfax*, 21 Vt. 102, the common law doctrine, that when one party sustains an injury by the culpable misconduct or *negligence* of another, the party injured may recover his damages in an action on the case, was applied to a controversy between two towns, and we think correctly. But this point is not relied upon by the defendants' counsel. The only question made is, as to the defendants' right to use the water in the manner claimed, and if they have such right, then the injury to the plaintiffs is *damnum absque injuria*.

The charge of the court puts the case to the jury upon the hypothesis, that the plaintiffs have no right to recover, if the occupants of the mills had been in the use of the water for the term of fifteen years next before the suit was brought, and the water had

passed from the mills in the same channel during the whole of that time, and the defendants had limited, as to time, the use of the water, by their *own interest and convenience*. We apprehend, there was error in the rule laid down by the County Court, as applied to the case then before the court. The case shows that the main damages had resulted to the town since the stone dam was built, which was raised higher than any of the previous dams, and also made tighter, and the mills run in cold weather in the winter, when they had only been accustomed to run but a little in the winter, and that in warm weather. By this means, there was a great increase of anchor-ice thrown upon the road, which, with the water, caused the damage.

No principle is better settled, than that the *extent* of the *presumed right* is determined by the *user*, upon which is founded the presumed grant; the right granted being only *co-extensive* with the right enjoyed. *Bealy* v. *Shaw*, 6 East. 208. *Bigelow* v. *Battle*, 15 Mass. 313. *Davenport* v. *Lampson*, 21 Pick. 72. *Cotton* v. *Pacaput Manf'c. Co.*, 13 Metc. 429; and it would seem from the case of *Stoult* v. *Baringdon*, 5 Esp. 56, as well as upon principle, that if the *enjoyment* of the water has been limited to certain days in the week, it cannot be lawfully used on any other day; and in the case before us, the use of the water, until the stone dam was built, had been limited in the winter season to a very partial use, and, even that, in warm weather. The case also shows, that the *user* of the water, after the erection of the stone dam, was not only more *extensive* in time, but the mode of enjoyment was different; that is, by means of a higher and tighter dam than before, and that damages then resulted from its use, which were unknown before. As the water had been used, after the erection of the stone dam, but a short t ere is no ground to presume a grant from the town to use t ter, as it had been used from the erection of that dam, until the suit was brought. In *Darlington* v. *Painter*, 7 Barr. (Penn. Rep.) 473, the defendant had for more than twenty years been in the habit of using a certain ditch to pass off water running over and accumulating upon his lands; and in 1844, he built a mill, and entered at the same time upon the plaintiff's land and cleared the ditch, saying he intended to use it for a *tail-race;* but when the action was brought, the mill had not commenced working, and it was held, that the defendant

could not use it for any purpose that would *increase* the flow, enlarge the ditch, or affect the water in any way different from that use, for which the water course was granted. In the charge of the court, the defendants are not confined to the use of the same amount of water that had been accustomed to flow over the highway in the race-way for fifteen years or more; neither are they required, *as to time,* to use it, as it had been used for fifteen years; and the right to use a thing, which rests in a supposed grant, may as well be qualified, as to the time of its use, as in any other respect; and in the case at bar, the time is all important.

It was only in cold winter weather, that anchor-ice was formed. The court do not instruct the jury upon what state of facts the plaintiffs would be entitled to recover, nor whether they could recover, if at all, against all the defendants. As the question has not been argued, as to the plaintiffs' right to maintain their action against all the defendants, we forbear to express any opinion upon it, though perhaps no difficulty would arise on that part of the case.

The judgment of the County Court is reversed, and a new trial granted.